IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ANTHONY LAMAR KITCHENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 324-051 |
| | ) | |
| NURSE WELLS; NURSE VENTSON; and NURSE SCOTT, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, incarcerated at Calhoun State Prison, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983, concerning events alleged to have occurred at Wheeler Correctional Facility ("WCF") in Alamo, Georgia. Because Plaintiff is proceeding IFP, his complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.     Screening the Complaint**

   **A.     Background**

Plaintiff names the following Defendants, all three of whom worked as nurses at WCF during the time period relevant to Plaintiff's allegations: (1) Ms. Wells; (2) Mr. Ventson; and (3) Ms. Scott. (See doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's factual

allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On February 9, 2022, Plaintiff awoke experiencing nausea and acute abdominal pain. (Id. at 6.) Defendant Wells saw Plaintiff in the prison infirmary, asked Plaintiff about his pain, checked his vital signs, and told Plaintiff to return to his dormitory. (Id.) Plaintiff continued to experience nausea and abdominal pain until April 8, 2022, at which time Plaintiff also experienced constipation and returned to the prison infirmary, where Defendant Wells conducted a visual and physical examination of Plaintiff's stomach. (Id.) She was unable to identify the cause of Plaintiff's issues and sent him back to his dormitory. (Id.)

Plaintiff continued to experience nausea and abdominal pain, as well as vomiting, and on May 4, Plaintiff returned to the infirmary, where he told Defendant Wells he was vomiting a minimum of three times per week and experienced intense abdominal pain. (Id.) Defendant Wells prescribed over-the-counter Maalox and sent Plaintiff back to his dormitory. (Id.) After continuing to experience these symptoms, Plaintiff returned to the infirmary on June 20, at which time Defendant Wells did not ask any questions or conduct a examination but simply gave Plaintiff a bottle of over-the-counter maximum strength Mylanta. (Id.)

On July 26, 2022, "after being unable to defecate or experience any type of bowel movement for the previous three months," Plaintiff returned to the infirmary, where Defendant Ventson determined Plaintiff was "100% dehydrated, instructed [Plaintiff] to drink plenty of water, and sent [him] back" to his dormitory. (Id. at 7.) A few days later, a WCF unit manager observed Plaintiff vomiting and escorted Plaintiff to the infirmary, where Defendant Ventson did not examine Plaintiff but simply told him to drink more water. (Id.)

Even though Plaintiff explained he vomited every time he drank water, had lost forty pounds since April, and lost consciousness just prior to his arrival at the infirmary, Defendant Ventson sent Plaintiff back to his dormitory. (Id.)

Upon returning to the dormitory, Plaintiff lost consciousness and returned to the infirmary. Two days later, Plaintiff awoke in the "patient bed-section," but no doctor examined or treated Plaintiff. (Id.) Instead, the mother of a doctor determined Plaintiff had blood in his vomit, even after Defendant Scott said there was no blood, and ordered WCF to immediately transport Plaintiff to a public hospital. (Id.) At the Fairview Park Hospital, doctors performed emergency surgery "to remove and treat portions of [Plaintiff's] deteriorated colon caused by stage 2 colorectal cancer." (Id.) Plaintiff seeks 3.5 million dollars in compensatory and punitive damages from Defendants because they treated him for "common upset stomach symptoms" when he actually had cancer. (Id. at 8-9.)

**B.    Discussion**

**1.    Legal Standard for Screening**

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. See Bilal v. Geo Care, LLC, 981 F.3d 903, 911 (11th Cir. 2020); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

    **2.**    **Plaintiff's Claim Raised Against Defendant Wells Is Time Barred**

Plaintiff's deliberate indifference claim against Defendant Wells is subject to dismissal under the statute of limitations. State law controls the length of the statute of

limitations period in § 1983 actions.  Abreu-Velez v. Bd. of Regents of Univ. Sys. of Ga., 248 F. App'x 116, 117 (11th Cir. 2007) (*per curiam*); Lawson v. Glover, 957 F.2d 801, 803 (11th Cir. 1987).  In Georgia, such claims for injuries to the person must be brought within two years of their accrual.  Richards v. Cobb Cnty., Ga., 487 F. App'x 556, 557 (11th Cir. 2012) (*per curiam*); Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986); O.C.G.A. § 9-3-33.  Although state law determines the applicable statute of limitations period for claims under § 1983, federal law determines the date of accrual.  See Brown v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003); Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996).  Under § 1983, a claim accrues when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."  Brown, 335 F.3d at 1261 (quoting Rozar, 85 F.3d at 561-62).

Here, Plaintiff signed his original complaint on June 26, 2024.  (See doc. no. 1, p. 9.)  Plaintiff's first interaction with Defendant Wells where she allegedly provided improper medical care occurred on February 9, 2022, and the last occurred on June 20, 2022.  (Id. at 6-7.)  As Plaintiff commenced this case over two years after June 20, 2022, his claims against Defendant Wells are outside of the two-year statute of limitations period and are subject to dismissal.[1]

### 3. Plaintiff Fails to State a Claim for Deliberate Indifference to a Serious Medical Need Against Defendant Scott

To state a claim for deliberate indifference to a serious medical need, Plaintiff must allege that:  (1) he had a serious medical need –the objective component, (2) a defendant

---

[1] As explained in note 2, *infra*, even if the deliberate indifference claim against Defendant Wells was not time barred, the substance of the allegations against her fail to state a constitutional claim.

acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (explaining that in addition to objective and subjective components of Eighth Amendment claim, a plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim). In particular, the plaintiff must first demonstrate he suffered a "objectively, sufficiently serious" deprivation. Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024) (*en banc*) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). To satisfy the objective component regarding a serious medical need, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).

After this initial threshold question, the plaintiff must also demonstrate a defendant acted with "subjective recklessness as used in the criminal law" by showing a defendant was "actually, subjectively aware [her] own conduct caused a substantial risk of serious harm to the plaintiff," but even if she knew of that substantial risk, she is not liable under the Eighth Amendment "if [s]he responded reasonably to the risk." Wade, 106 F.4th at 1262 (citing Farmer, 511 U.S. at 839, 844-45). Mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (*per curiam*) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable

6

under state law" to establish deliberate indifference claim).  In addition, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).  The Eighth Amendment does not mandate that the medical care provided to the prisoner be "perfect, the best obtainable, or even very good."  Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)).

Here, Plaintiff's only allegations against Defendant Scott is that on one occasion, she did not correctly read a test to identify blood in his vomit.  (Id. at 7.)  While one incorrect reading of a test may be negligent, it is not a constitutional violation.  See Campbell, 169 F.3d at 1363-72.  Stated otherwise, Plaintiff has not alleged Defendant Scott was "actually, subjectively aware [her] own conduct caused a substantial risk of serious harm to the plaintiff."[2]  Wade, 106 F.4th at 1262.  Moreover, Plaintiff has not alleged this one misread test caused him any injury, as he states another person repeated the test, identified blood in in his vomit, and immediately ordered his transport to the hospital.  See Goebert, 510 F.3d at 1326.  In sum, Plaintiff has not stated a valid deliberate indifference claim against Defendant Scott.

## II. Conclusion

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants Wells and Scott be **DISMISSED** because Plaintiff fails to state a claim upon which

---

[2] Even if the claim against Defendant Wells was not time barred, this same analysis would apply to the substance of Plaintiff's claim against her.  That is, there is no information to suggest Defendant Wells was subjectively aware that her choice to treat Plaintiff's general symptoms with over-the-counter medicine would cause Plaintiff a substantial risk of harm.  Unlike Defendant Ventson – upon whom service of process is directed by separate order – Plaintiff does not allege Defendant Wells had been informed Plaintiff vomited every time drank water, had lost forty pounds in two months, or had lost consciousness before arriving for treatment.  While Defendant Wells' treatment may not have been perfect, such level of treatment is not constitutionally required.  See Harris, 941 F.2d at 1510.

relief may be granted against either individual.  By separate Order, the Court directs service of process on Defendant Ventson.

    SO REPORTED and RECOMMENDED this 8th day of November, 2024, at Augusta, Georgia.

                                             /s/ Brian K. Epps
                                             BRIAN K. EPPS
                                             UNITED STATES MAGISTRATE JUDGE
                                             SOUTHERN DISTRICT OF GEORGIA