IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| ANTHONY LAMAR KITCHENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CV 324-051 |
| | ) |
| NURSE WELLS; NURSE VENTSON; | ) |
| and NURSE SCOTT, | ) |
| | ) |
| Defendants. | ) |

**O R D E R**

Plaintiff, incarcerated at Calhoun State Prison, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983, concerning events alleged to have occurred at Wheeler Correctional Facility ("WCF") in Alamo, Georgia. Because Plaintiff is proceeding IFP, his complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.      Screening the Complaint**

Plaintiff names the following Defendants, all three of whom worked as nurses at WCF during the time period relevant to Plaintiff's allegations: (1) Ms. Wells; (2) Mr. Ventson; and (3) Ms. Scott. (See doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On February 9, 2022, Plaintiff awoke experiencing nausea and acute abdominal pain. (Id. at 6.) Defendant Wells saw Plaintiff in the prison infirmary, asked Plaintiff about his pain, checked his vital signs, and told Plaintiff to return to his dormitory. (Id.) Plaintiff continued to experience nausea and abdominal pain until April 8, 2022, at which time Plaintiff also experienced constipation and returned to the prison infirmary, where Defendant Wells conducted a visual and physical examination of Plaintiff's stomach. (Id.) She was unable to identify the cause of Plaintiff's issues and sent him back to his dormitory. (Id.)

Plaintiff continued to experience nausea and abdominal pain, as well as vomiting, and on May 4, Plaintiff returned to the infirmary, where he told Defendant Wells he was vomiting a minimum of three times per week and experienced intense abdominal pain. (Id.) Defendant Wells prescribed over-the-counter Maalox and sent Plaintiff back to his dormitory. (Id.) After continuing to experience these symptoms, Plaintiff returned to the infirmary on June 20, at which time Defendant Wells did not ask any questions or conduct a examination but simply gave Plaintiff a bottle of over-the-counter maximum strength Mylanta. (Id.)

On July 26, 2022, "after being unable to defecate or experience any type of bowel movement for the previous three months," Plaintiff returned to the infirmary, where Defendant Ventson determined Plaintiff was "100% dehydrated, instructed [Plaintiff] to drink plenty of water, and sent [him] back" to his dormitory. (Id. at 7.) A few days later, a WCF unit manager observed Plaintiff vomiting and escorted Plaintiff to the infirmary, where Defendant Ventson did not examine Plaintiff but simply told him to drink more water. (Id.) Even though Plaintiff explained he vomited every time he drank water, had lost forty pounds since April, and lost consciousness just prior to his arrival at the infirmary, Defendant Ventson sent Plaintiff back to his dormitory. (Id.)

Upon returning to the dormitory, Plaintiff lost consciousness and returned to the infirmary. Two days later, Plaintiff awoke in the "patient bed-section," but no doctor examined or treated Plaintiff. (Id.) Instead, the mother of a doctor determined Plaintiff had blood in his vomit, even after Defendant Scott said there was no blood, and ordered WCF to immediately transport Plaintiff to a public hospital. (Id.) At the Fairview Park Hospital, doctors performed emergency surgery "to remove and treat portions of [Plaintiff's] deteriorated colon caused by stage 2 colorectal cancer." (Id.) Plaintiff seeks 3.5 million dollars in compensatory and punitive damages from Defendants because they treated him for "common upset stomach symptoms" when he actually had cancer. (Id. at 8-9.)

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds Plaintiff has arguably stated a viable claim for medical deliberate indifference against Defendant Ventson. See Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024) (*en banc*). Accordingly, process shall issue as to this Defendant. In a companion Report and Recommendation, the Court recommends dismissal of Defendants Wells and Scott from the case.

## II.     Instructions

**IT IS HEREBY ORDERED** service of process shall be effected on Defendant Ventson. The United States Marshal shall mail a copy of the complaint, (doc. no. 1), and this Order by first-class mail and request that Defendant waive formal service of the summons. Fed. R. Civ. P. 4(d). Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for failure to return the waiver. Fed. R. Civ. P. 4(d)(2). A defendant whose return of the waiver is timely does not have to answer the complaint until sixty

days after the date the Marshal mails the request for waiver. Fed. R. Civ. P. 4(d)(3). However, service must be effected within ninety days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant or the entire case. Fed. R. Civ. P. 4(m). Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate Defendant to effect service.

**IT IS FURTHER ORDERED** Plaintiff shall serve upon the defendant, or upon the defense attorney(s) if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court. Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendant or defense counsel. Fed. R. Civ. P. 5; Loc. R. 5.1. Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number. Fed. R. Civ. P. 10(a). Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by the defendant. Upon being given at least five days notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>. The defendant shall ensure Plaintiff's deposition and any other depositions in the case are taken <u>within the 140-day discovery period</u> allowed by this Court's Local Rules.

While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.

4

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Loc. R. 41.1. If Plaintiff wishes to obtain facts and information about the case from the defendant, Plaintiff must initiate discovery. <u>See generally</u> Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery). Plaintiff should begin discovery promptly and complete it within four months after the filing of the first answer of a defendant named in the complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants. <u>See</u> Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions. <u>Id.</u> Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Loc. R. 26.5.

Plaintiff must maintain a set of records for the case. If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Loc. R. 7.5. Therefore, if Plaintiff fails to respond to a

motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one days after service of the motion. Loc. R. 7.5, 56.1. A failure to respond shall indicate that there is no opposition to the motion. Loc. R. 7.5. Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should a defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine issue as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these: any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

SO ORDERED this 8th day of November, 2024, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA