IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ANTHONY LAMAR KITCHENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 324-051 |
| | ) | |
| WILLIAM VINSON, Nurse, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, incarcerated at Calhoun State Prison, is proceeding *pro se* and *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983, concerning events alleged to have occurred at Wheeler Correctional Facility ("WCF") in Alamo, Georgia. Defendant filed a pre-answer motion to dismiss. (Doc. no. 19.) Plaintiff did not respond, and therefore Defendant's motion is deemed unopposed. See Loc. R. 7.5. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to dismiss be **GRANTED**.

**I.     BACKGROUND**

   **A.     Procedural History**

Plaintiff filed his first case based on the medical treatment forming the basis of the current complaint in 2023. Kitchens v. Wells, CV 323-012 (S.D. Ga. Feb. 6, 2023) (hereinafter "CV 323-012"). On June 2, 2023, United States District Judge Dudley H. Bowen, Jr., dismissed that case without prejudice based on Plaintiff's failure to exhaust administrative remedies. CV 323-012, doc. no. 11. In particular, the Court concluded Plaintiff's illness did

not excuse the failure to file a grievance because the grievance procedure allowed for waiving time limits for good cause, including circumstances of serious illness and being housed outside of prison for medical treatment. Id., doc. no. 9, pp. 8-11.

On July 22, 2024, Plaintiff filed the instant case against the same three Defendants, based on the same challenged medical treatment. (Doc. no. 1.) Plaintiff stated he had filed a grievance, as well as an appeal of the denial of his grievance. (Id. at 3-4.) Pursuant to screening conducted under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), Judge Bowen dismissed two of three Defendants. (Doc. nos. 12, 17.) The Court permitted Plaintiff's Eighth Amendment claim for deliberate indifference to proceed against Defendant Vinson. (Doc. no. 13.) Defendant now moves to dismiss, arguing Plaintiff did not seek a good cause waiver to file an untimely grievance and did not timely appeal the rejection of his untimely grievance. (See generally doc. no. 19.)

B.    **Complaint Allegations**

With respect to Defendant Vinson and the claim raised against him which remains in the case, Plaintiff alleges the following facts in his complaint. Plaintiff began experiencing nausea and acute abdominal pain on February 9, 2022. (Doc. no. 1, p. 6.) Over the course of the next four months, Plaintiff continued to experience nausea and abdominal pain, as well as vomiting and constipation, but the now-dismissed Defendant nurse who saw him in the prison infirmary did not identify the cause of his malaise and simply provided over-the-counter medication or no treatment at all. (Id.)

On July 26, 2022, "after being unable to defecate or experience any type of bowel movement for the previous three months," Plaintiff returned to the infirmary, where Defendant Vinson determined Plaintiff was "100% dehydrated, instructed [Plaintiff] to drink plenty of

2

water, and sent [him] back" to his dormitory. (Id. at 7.) A few days later, a WCF unit manager observed Plaintiff vomiting and escorted Plaintiff to the infirmary, where Defendant Vinson did not examine Plaintiff but simply told him to drink more water. (Id.) Even though Plaintiff explained he vomited every time he drank water, had lost forty pounds since April, and lost consciousness just prior to his arrival at the infirmary, Defendant Vinson sent Plaintiff back to his dormitory. (Id.)

Upon returning to the dormitory, Plaintiff lost consciousness and returned to the infirmary. Two days later, Plaintiff awoke in the "patient bed-section," but no doctor examined or treated Plaintiff. (Id.) Instead, the mother of a doctor determined Plaintiff had blood in his vomit, even after the second, now-dismissed Defendant nurse said there was no blood, and ordered WCF to immediately transport Plaintiff to a public hospital. (Id.) At the Fairview Park Hospital, doctors performed emergency surgery "to remove and treat portions of [Plaintiff's] deteriorated colon caused by stage 2 colorectal cancer." (Id.) Plaintiff seeks 3.5 million dollars in compensatory and punitive damages. (Id. at 9.)

C. **Plaintiff's Relevant Grievance History**

In support of the motion to dismiss, Defendant produced the declaration of LaJuanna Johnson, Grievance Coordinator at WCF, who has access to and the ability to review grievances filed by inmates who have been incarcerated at WCF and whose responsibilities include responding to inmate grievances. (See doc. no. 19-1, Johnson Decl. ¶ 4.) Ms. Johnson is employed by CoreCivic, the private contractor that owns and operates WCF, and she is "familiar with and well-versed" in the Georgia Department of Corrections ("GDOC") grievance procedures, which apply to prisoners at WCF. (Id. ¶¶ 4, 5.) Ms. Johnson identified only one grievance Plaintiff filed with respect to his medical treatment from approximately

3

February through August 2022 at WCF that forms the basis for this case: Grievance Number 358328. (Id. ¶¶ 15, 16 & Att. B.) Plaintiff filed Grievance Number 358328 on September 18, 2023, alleging, relevant to Defendant Vinson, he was seen for vomiting and significant weight loss on July 26, 2022, but Defendant did not examine Plaintiff, told him to drink more water, and sent Plaintiff back to his dormitory. (Id. ¶ 18 & Att. B, p. 1.) Upon returning to his dormitory, Plaintiff lost consciousness, and a guard had to return Plaintiff to the infirmary, where he stayed for two days without ever seeing a doctor. (Id., Att. B, p. 1.) Plaintiff was eventually taken to the hospital for surgery to remove part of his colon because he had stage 2 colorectal cancer. (Id. ¶ 18 & Att. B, p. 1.)

Grievance Number 358328 was rejected as untimely because Plaintiff did not file it within ten calendar days of when Plaintiff knew or should have known, of the facts giving rise to the grievance, and he did not reference or request a waiver of the time limit for good cause, as is allowed under the applicable grievance policy. (Id. ¶¶ 8, 19, 20 & Att. A, p. 8, § IV(C)(1)(b) & Att. B, pp. 1-2.) Good cause is defined as: "A legitimate reason involving unusual circumstances that prevented the Offender from timely filing a grievance [or] appeal. . . . Examples include: serious illness, being housed away from a facility covered by this procedure (such as being out on a court production order or for medical treatment). (Id., Att. A, p. 2, § III(H).) Plaintiff was notified about the rejection of Grievance Number 358328 on October 17, 2023, and he filed an appeal on October 25, 2023. (Id., Att. B, p. 2.) The appeal was denied because Plaintiff failed to timely file his original grievance within the ten-day period provided for under the applicable grievance procedure. (Id.)

## II.   DISCUSSION

### A.   The Legal Framework for Determining Exhaustion

Where, as here, a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.  First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted.  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)).  If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that the plaintiff has failed to exhaust his administrative remedies.  Id.  Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted.  Id.  Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court,

the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

The United States Supreme Court has identified three circumstances where administrative remedies are not available and therefore exhaustion "does not come into play": (1) prison officials refuse to follow established grievance policy; (2) the administrative process is so confusing or vague as to be "essentially unknowable"; and (3) prison officials prevent filing grievances through "machination, misrepresentation or intimidation." Ross v. Blake, 578 U.S. 632, 643-44 (2016). Here, Plaintiff makes no allegation or arguments under any of the three scenarios outlined in Ross. To the contrary, Plaintiff contends in the complaint he

6

was able to utilize the grievance procedure to file a grievance and an appeal. (Doc. no. 1, pp. 3-4.)

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159. The Eleventh Circuit has repeatedly ruled a prisoner plaintiff must *properly* use all available administrative steps available in order to satisfy the PLRA's exhaustion requirement. Varner v. Shepard, 11 F.4th 1252, 1260-61 (11th Cir. 2021) (collecting cases).

**B.      The Administrative Grievance Procedure**

As part of the declaration of Ms. Johnson, Defendant has provided a copy and explanation of the applicable Statewide Grievance Procedure, Policy Number ("PN") 227.02, which became effective May 10, 2019. (Johnson Decl. ¶¶ 6-14 & Att. A.) The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C). The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor. Id. § IV(C)(1)(c) & (d). The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance may be rejected, *inter*

7

*alia*, if it raises one of the listed non-grievable issues, is not timely filed, includes threats or insults, or raises more than one issue/incident. Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal. Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2). The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal. Id. § IV(C)(2)(e). If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance. Id. § (C)(2)(g). The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal. Id.

C. **Plaintiff's Failure to Exhaust**

In his complaint signed on June 26, 2024, Plaintiff alleges Defendant Vinson saw him in the WCF infirmary in July of 2022. (Doc. no. 1, pp. 4 -5.) Plaintiff also states he filed an original grievance, which was denied, and an appeal of the denial of the original grievance. Under step one of Turner, the Court takes Plaintiff's version of the facts as true, concludes dismissal is not appropriate, and moves to step two. See Turner, 541 F.3d at 1082.

Under the second Turner step, the Court must make specific findings to resolve the factual disputes regarding exhaustion, and Defendant has the burden to prove Plaintiff did not exhaust administrative remedies. See Maldonado v. Baker Cnty. Sheriff's Office, 23 F.4th 1299, 1307 (11th Cir. 2022). As explained in detail below, the Court concludes Defendant has carried the burden to show Plaintiff did not properly exhaust his administrative remedies.

Defendant has shown through the Johnson Declaration that Plaintiff filed only one grievance with respect to his medical treatment that forms the basis for this case: Grievance Number 358328. (Johnson Decl. ¶¶ 15, 16 & Att. B.) When faced with the Johnson Declaration signed under penalty of perjury, Plaintiff did not dispute this information. Indeed, he did not respond to the motion to dismiss, let alone contest any information contained therein.

Plaintiff filed Grievance Number 358328 on September 18, 2023, over one year after the medical treatment at issue, and well outside the ten-day deadline set by PN 227.02, § IV(C)(1)(b). Nor did Plaintiff's grievance make any reference to, or request application of, a good cause waiver. (Johnson Decl., Att. B, p. 1.) Nor could any such request be inferred from the original grievance, as there is no timeline provided regarding his surgery to remove part of his colon or his return to WCF. (Id.) Indeed, Plaintiff's first lawsuit based on these same claims was dismissed based on failure to exhaust administrative remedies on June 2, 2023. See CV 323-012, doc. no. 11. The Court explained the grievance process and the good cause exception in that first case. See id., doc. no. 9, pp. 5-9. Yet, Plaintiff waited over three months after dismissal to file Grievance Number 358328 concerning his medical treatment and made no reference to any issue preventing him from timely filing a grievance in 2022, let alone upon dismissal of his first case in 2023.

Grievance Number 358328 was rejected as untimely because Plaintiff did not file it within ten calendar days of when Plaintiff knew or should have known, of the facts giving rise to the grievance. (Johnson Decl. ¶¶ 8, 19, 20 & Att. B, pp. 1-2.) Plaintiff was notified about the rejection of Grievance Number 358328 on October 17, 2023, and he filed an appeal on October 25, 2023. (Id., Att. B, p. 2.) The appeal was denied because Plaintiff failed to timely file his grievance within the ten-day period provided for under the applicable grievance procedure. (Id.)

In light of the evidence of record, the Court concludes Plaintiff did not exhaust administrative remedies because the exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules, including failing to request leave to file an untimely grievance or assert good cause for failing to timely file a grievance. See Bryant, 530 F.3d at 1379 (rejecting argument that grievance procedure exhausted with untimely filing where prisoner never sought good cause waiver); Johnson, 418 F.3d at 1158-59 (emphasizing Congressional intent to allow prison officials first opportunity to address grievance issues and refusing to allow untimely grievance to satisfy exhaustion requirement where prisoner "did not request leave to file an untimely administrative grievance and did not assert good cause for his failure to file a timely grievance before he filed his federal complaint"); see also Varner, 11 F.4th at 1264 ("Because Varner did not file a timely grievance and because GDC did not waive the procedural defects in the untimely grievances that Varner did file, Varner failed to satisfy the PLRA's exhaustion requirement."); Myton v. Moye, Civ. Act. No. 619-032, 2021 WL 4978670, at *2 (S.D. Ga. Sept. 17, 2021) (rejecting exhaustion argument where prisoner argued in federal court he had good cause to file untimely grievance but never presented any such argument to GDOC or

10

requested waiver of time limit when grievance filed), *adopted by* 2021 WL 4979407 (S.D. Ga. Oct. 26, 2021).

The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95. Similarly, here, Plaintiff should not be allowed to bypass the administrative process by simply presenting an untimely grievance.

Therefore, based on the above, the Court finds Defendant has met his burden to show Plaintiff did not satisfy the PLRA's exhaustion requirement prior to filing this lawsuit because he filed his grievance over one-year after he knew the facts of the events forming the basis for this lawsuit and did not request permission for his untimely filing or request application of a good cause waiver.[1] Because Plaintiff did not properly exhaust his administrative remedies

---

[1] Because the original grievance was untimely and rejected as such, the Court need not reach Defendant's additional argument that the appeal was also untimely. (Doc. no. 19, p. 7.) For the sake of completeness, however, the Court notes the appeal was not rejected as untimely, but instead was denied based upon the conclusion the original grievance was properly rejected as untimely at the institutional level. (Johnson Decl. ¶ 24 & Att. B, p. 2.) In the Eleventh Circuit, "district courts may not enforce a prison's procedural rule to find a lack of exhaustion after the prison itself declined to enforce the rule." Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1215 (11th Cir. 2015).

prior to initiating this case, the motion to dismiss should be granted. See Bryant, 530 F.3d at 1379; Johnson, 418 F.3d at 1158-59; see also Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

### III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to dismiss be **GRANTED**, (doc. no. 19), and this case be **DISMISSED** and **CLOSED**.

SO REPORTED and RECOMMENDED this 4th day of March, 2025, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA